W. W. Clarke and D. Somers Clarke also known as Dorothy Somers Clarke v. Commissioner.
Clarke v. Commissioner
Docket No. 3327.
United States Tax Court
1944 Tax Ct. Memo LEXIS 167; 3 T.C.M. (CCH) 758; T.C.M. (RIA) 44246; July 27, 1944
*167 F. C. Brubaker, C.P.A., for petitioners. T. F. Callaghan, Esq., for respondent. HILL Memorandum Opinion HILL, Judge: Respondent determined a 1939 income tax deficiency of $232.76 against both petitioners and a 1940 income tax deficiency of $1920.38 against petitioner, D. Somers Clarke alone. The parties have stipulated that we may enter a decision as to the 1939 deficiency in the amount determined by respondent. Hence, there remains for redetermination only the 1940 deficiency against D. Somers Clarke. The sole question is whether respondent erred by including in petitioner's 1940 taxable net income $4,887.57 received by petitioner as interest on income, withheld by an estate but properly payable to her. The proceeding was submitted upon a stipulation of facts which are found accordingly. [The Facts] Petitioner is a resident of Los Angeles, California and her 1940 income tax return was filed with the collector for the Sixth District of California. She is an income and corpus beneficiary under a testamentary trust created under the will of her father, Charles W. Somers, who died testate on June 29, 1934. Fred E. Baehr, George E. Frey and petitioner, D. Somers Clarke, were beneficiaries *168 under decedent's will and were the executors and trustees thereunder. The Somers Coal Company (hereinafter sometimes referred to as the Company) was an Ohio corporation. It owned coal lands, some of which it operated for the production of coal and some of which were leased to the Goodyear Rubber & Tire Company on a production royalty basis. The J. H. Somers Coal Company (hereinafter sometimes referred to as the J. H. Co.) was an Ohio corporation engaged in the sale of coal. The Somers estate owned 2,996 of the outstanding 3,000 shares of the stock of the Company and 196 of the 200 outstanding shares of the J. H. Co. Certain litigation was instituted in the Probate Court of Ottawa County, Ohio, by Baehr and Frey as plaintiffs against the petitioner and others as defendants, which resulted in a decree of that court on May 10, 1938. In accordance with the terms of such decree all of the stock of the J. H. Co. was sold and transferred to the Company. The Company was then liquidated by conveying its unleased coal lands, mining equipment and current assets to the J. H. Co. and distributing the remainder of its assets, including the J. H. Co. stock, the Goodyer lease contract and the lands *169 involved therein to the executors of the decedent's estate. The following excerpts from such decree of the Probate Court of Ottawa County are pertinent to the question here presented: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that, for estate accounting purposes, the Executors and Trustees of said estate shall set aside annually in a sinking fund, out of the gross receipts of the Goodyear lease, a depletion reserve in an amount not less than the sum allowed as a depletion reserve deduction by the Federal Government for income tax purposes, and that said sinking fund shall comprise and be held by the Executors and Trustees as a part of the principal of said estate; that in the event said Executors and Trustees in any year set aside in a sinking fund from the gross receipts of the Goodyear lease a depletion reserve in excess of the sum allowed as a depletion reserve by the Federal Government for income tax purposes, then such annual depletion reserve deduction shall be calculated so as not to exceed a sum sufficient to provide a sinking find in the sum of One Million, One Hundred Twenty-one Thousand Two Hundred Forty-five and 43/100 Dollars ($1,121,245.43) as of August 31, 1946, *170 provided that if the sinking fund is reduced by payment therefrom of the debts of the estate, the amount so withdrawn therefrom shall not be restored; that such depletion reserve shall be computed annually upon the gross receipts required to be paid under the Goodyear lease for the period from July 1, 1934, to August 31, 1946, on a fixed percentage basis, i.e., by depositing each year a fixed and uniform per centum of the Goodyear rental received during such year; that the balance of the annual payments under the Goodyear lease and all income earned upon the sinking fund shall be credited by said Executors and Trustees to the income of the estate: * * * "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the amount of income of the estate prior to December 31, 1937 withheld by reason of the requirements of the estate in its administration and not paid to defendant D. Somers Clarke, shall be calculated as hereinbefore directed and set up in the accounts of the Executors and Trustees as an indebtedness of the principal of the estate to said defendant; that said indebtedness together with interest thereon at the rate of 3 1/2% per annum accruing after December 31, 1937, shall be paid *171 to said defendant out of the principal of the estate as funds therefor become available; and that all income accruing to said D. Somers Clarke from and after December 31, 1937, shall be calculated quarterly, and to the extent the same is not paid, shall be set up as an indebtedness of the principal and as funds therefor become available, shall be paid to said defendant out of the principal of the estate, with interest thereon at the rate of 3 1/2% per annum." The amount of income earned by the estate of Charles W. Somers prior to December 31, 1937 withheld by the estate but properly payable to petitioner, D. Somers Clarke, was determined by the Probate Court to be $70,993.77. A fiduciary income tax return was filed for the year 1940 on behalf of the Charles W. Somers trust disclosing an amount distributable to petitioner, D. Somers Clarke, as beneficiary, in the sum of $26,064.69. In arriving at such distributable amount the trust claimed as a deduction the sum of $4,887.57 representing interest on the unpaid balance of the $70,993.77 of income hereinabove referred to, such interest being due D. Somers Clarke under the terms of the Probate Court decree. The item of $4,887.57 representing *172 such interest was charged against the corpus of the trust on its books of account. In her Federal income tax return for 1940 petitioner, D. Somers Clarke, reported the sum of $4,887.57 as interest and reported the sum of $26,064.69 as income from fiduciaries. The correct amount of the trust's income distributable to petitioner in 1940 is $30,952.26 (the $26,064.69 previously disclosed by the fiduciary plus the $4,887.57 which was erroneously eliminated in making the computation of petitioner's distributive share). The amount of $4,887.57 was paid to petitioner in 1940 in addition to her distributive income from the trust. Respondent adjusted petitioner's net fiduciary income for 1940 by increasing it by $4,887.57 to include the true amount of the distributable income from the trust and the deficiency was determined as a consequence thereof. Before discussing the only real question, stated above, we give brief attention to a specious argument made by petitioner. She asserts that respondent, in increasing her income from fiduciaries by $4,887.57 and at the same time including in income the $4,887.57 interest item reported in her tax return, is taxing the same item of income twice. *173 In view of the stipulated facts, this contention is untenable. The last two paragraphs of the stipulation are as follows: 8. The distributive income of the petitioner, as beneficiary of the Charles W. Somers trust for the taxable year 1940, is correctly stated in the amount of $30,952.26. 9. The amount of $4,887.57 was paid to the petitioner, D. Somers Clarke, in 1940, in addition to her distributive income from said trust for the year 1940. Thus, petitioner has admitted the receipt of $35,839.83 whereas she reported from the same sources and paid a tax on only $30,953.26, or $4,887.57 less than the total amount received. Obviously, no case of double taxation can be made of this set of facts merely upon the respondent's inclusion in petitioner's taxable income of the full amounts received by her in the year in question. This brings us to the propriety of taxing to petitioner the $4,887.57 which was reported as interest. Petitioner contends that the amount in question, despite the name given it, was not interest at all, but rather the accelerated payment of corpus of a trust to which petitioner would have eventually become entitled in possession anyway as corpus beneficiary thereof. *174 Therefore, petitioner says, the $4,887.57 must be regarded as coming to her exempt from income tax. It is true that a payment is not made interest and taxable as such simply by so denominating it. , aff'd. . Whether or not a payment constitutes interest depends upon its real purpose and effect as disclosed by the circumstances surrounding it. On the other hand, as was said in , cert. den. . "Congress did not use the term 'interest' in the revenue acts with reference to 'some esoteric analysis,' but in its 'usual, ordinary and everyday meaning.'" Such meaning may be reduced to the definition, "compensation allowed by law or fixed by the parties, for the use or forbearance of money or as damages for its detention." ;, and cases cited therein. Does the $4,887.57 payment in question fit into this definition? It is plain that it does. Between *175 the date of the death of Charles W. Somers and December 31, 1937 his estate received income of $70,993.77 which should have been paid over to petitioner but which, in fact, was retained by the state. Petitioner's right to this sum was established by a final decree of the Probate Court having jurisdiction over the parties and the subject matter. Moreover, by the same decree 3 1/2% interest computed on the withheld sum from December 31, 1937 so long as the indebtedness remained outstanding was ordered paid to petitioner. The $4,887.57 represented the interest payment computed and paid to petitioner in 1940 pursuant to the court order. Clearly the payment constituted compensation or damages for the detention of money. Hence, it was interest and was properly called and taxed as such. ;, aff'd ; ; ;. In such circumstances we *176 have before held it immaterial that the interest was payable out of corpus. In , aff'd. , we said: Once the proposition is accepted that the amount is interest and received by the petitioner as such, it matters not what the source of the interest is; and, just as in the Whitehouse case it was said that annuities are tax free irrespective of the adventitious fact that they may in one year be paid from income and in another year from corpus, so interest is taxable irrespective of whether it be paid from income or corpus. The corpus of the trust was previously the principal of the estate or a part thereof as set up and defined in the decree of the Probate Court. The interest paid to petitioner in 1940 was by decree of the Probate Court a charge against such principal. Consequently, when such principal passed to the trust as corpus of the latter it so passed burdened with the charge of such interest payment. Moreover, reference to the quoted excerpts from the Probate Court's decree clearly discloses that the sinking fund therein established shall comprise and be held by both *177 the executors and trustees as a part of the principal of the estate out of which the interest payment here involved shall be paid. Therefore whether such payment of $4,887.57 was out of the principal of the estate before distribution to the trust or out of corpus of the trust after such distribution, it represented interest on the income of the estate withheld from but properly payable to petitioner prior to December 31, 1937. Accordingly, it was taxable income to her. Decision will be entered for respondent.